UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JACLYN MOORE, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 17-cv-6266 |
| Plaintiff, | **CLASS ACTION** |
| v. | **JURY TRIAL DEMANDED** |
| HIGHPOINT SOLUTIONS LLC, and CHRISTINE M. CUSHMAN | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

Plaintiff Jaclyn Moore ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this class action against HighPoint Solutions LLC ("HighPoint" or "Company") and Christine M. Cushman ("Cushman"), and alleges the following based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation of counsel.

**NATURE OF THE ACTION**

1. On August 7, 2017, the Montgomery County, PA District Attorney's office and certain news outlets announced that HighPoint's Human Resource Director, Cushman, had stolen approximately one million dollars from the Company over a two-year period using private financial information HighPoint maintained concerning subcontractors. Specifically, from May 5, 2015 to June 15, 2017, Cushman used this stolen information to issue herself *45 fraudulent checks totaling $919,301* (the Aug. 7, 2017 MDA Press Release").

2. On August 8, 2017, HighPoint's CEO John Seitz ("Seitz") emailed Highpoint's employees concerning Cushman's actions, informing them that the Company had negligently disclosed private data to a criminal, that she had used the information over the last two years to steal almost one million dollars and that HighPoint was far behind the curve in terms of fraud prevention and detection as well as unravelling Cushman's criminal activities (the "Aug. 8, 2017 Email"). In the Aug. 8, 2017 Email, Seitz implored employees to "understand that our HR Department does have on file (and Ms. Cushman had access to) all employee Social Security information as well as bank account information for those using direct deposit" and stated "we don't know if employee personal information was also stolen. Please be on alert for any suspicious activity relating to your personal and financial records." On August 10, 2017, Seitz emailed HighPoint's employees again, informing them of the Company's ongoing efforts to understand the scope of the fraud and deal with its fallout (the "Aug. 10, 2017 Email"). The events referenced in the Aug. 8, 2017 Email and Aug. 10, 2017 Email are more fully discussed herein and are referred to as the "Data Breach."

3. Against this backdrop, Plaintiff, a contract employee of HighPoint, brings this class action against Defendants for, among other things, negligently failing to secure and safeguard her personal identifying information ("PII"), and that of, at least, all of HighPoint's past and current employees, agents, subcontractors, customers and service providers, as well as their families and dependents (the "Class"). This PII includes, but is not limited to, the: names, Social Security numbers, Taxpayer Identification Numbers, birthdates, addresses, telephone numbers, email addresses, healthcare records, salary and bonus details, contract and agreement details, sensitive employment information such as performance evaluations, disciplinary and employment termination details, severance packages, and/or other personal information

concerning HighPoint's past and current employees, agents, subcontractors, customers and service providers, as well as their families and dependents. HighPoint was also negligent in failing to provide timely and adequate notice to Plaintiff and the Class that their PII had been stolen and precisely what types of information were stolen.

4. Defendants owed a legal duty to Plaintiff and the Class to maintain and conform with reasonable and adequate security measures to secure, protect, and safeguard their PII that the Company collected and stored. Defendants breached that duty by one or more of the following actions or inactions: (1) stealing Plaintiff's and the Class members' PII; (2) failing to design and implement appropriate internal controls and supervisory systems; (3) failing to properly and adequately monitor Cushman for criminal and other untoward activities; (4) losing control of and failing to timely re-gain control over the PII; and/or (5) improperly storing and retaining the PII in spite of the aforementioned failings and in light of prudent industry practices.

5. Due to Defendants' negligence and other violations, Plaintiff and the Class has or will have to purchase extensive identity protection services and insurance, and take other measures to protect their compromised PII. Notwithstanding these measures, Plaintiff and the Class face ongoing future vulnerability to identity theft, medical information theft, tax fraud, corporate espionage and additional financial theft because their PII has been stolen. Accordingly, Plaintiff brings this action against Defendants.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), in that:

>   (a) the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs;
>
>   (b) this is a class action involving 100 or more class members; and

(c) this is a class action in which at least one member of the Plaintiff class is a citizen of a state different from at least one Defendant.

7. This Court additionally has subject matter jurisdiction over this matter on the basis of diversity jurisdiction, 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and Plaintiff does not share citizenship with any of the Defendants.

8. This Court has personal jurisdiction over the parties because Plaintiff is a New Jersey citizen and: (a) Defendant HighPoint is authorized to and does conduct substantial business in this State, maintains offices in this State, has had systematic and continuous contacts within this State, and has agents and representatives that can be found in this State; and (b) Defendant Cushman, at all relevant times, was authorized to and did conduct substantial business in this State on behalf of defendant HighPoint.

9. Under 28 U.S.C. § 1391, venue is proper in this District because Plaintiff is a New Jersey citizen, and Defendant engaged in substantial conduct relevant to the claims of the Plaintiff and caused harm to Plaintiff and members of the Class in this District.

## PARTIES

10. Plaintiff is a New Jersey citizen. HighPoint has employed Plaintiff since April 2017. Plaintiff's PII was compromised as a result of the Data Breach described herein. Plaintiff learned of the Data Breach by reading the Aug. 7, 2017 MDA Press Release. As a result of Defendants' negligence and other wrongdoing, Plaintiff will be forced to incur costs, including spending money on identity theft protection for years to come and has expended time and resources attempting to safeguard herself from identity theft or other harms caused by the theft of her PII as a result of the Data Breach. Going forward, Plaintiff anticipates spending considerable time and effort to contain the impact of the Data Breach. Plaintiff's claims are typical of the Class.

11. Defendant HighPoint is a corporation organized under the laws of the Commonwealth of Pennsylvania with its U.S. headquarters in East Norriton, PA and international headquarters in Geneva, Switzerland with additional offices in California, Florida, Illinois, Massachusetts, New Jersey, India and Switzerland. It purports to be a premier provider of specialized information technology services dedicated to the life sciences and healthcare industries and employees approximately 1000 people.

12. Defendant Cushman is a citizen of Pennsylvania. She served as Highpoint's Human Resources Director in 2007 and again from 2014 until her termination in July 2017, when HighPoint and/or police confronted her about the thefts described herein. At that time, Cushman offered to pay back $56,000 that she still had, and enter into a payment plan for the remaining $863,301, according to reports.

**FACTUAL ALLEGATIONS**

13. In connection with her employment by HighPoint, Defendants required Plaintiff to provide certain PII. HighPoint's customers and service providers were required to provide equivalent information in order to conduct business with the Company. On information and belief, HighPoint maintained this pertinent personal information in a common file, with the understanding and duty to keep said information secure and confidential.

14. On or about August 7, 2017, the Montgomery County PA District Attorney's Office issued the Aug. 7, 2017 MDA Press Release describing Cushman's data (and money) theft and the resultant investigation, thus informing Plaintiff and the world that Cushman had stolen private financial information available to her as HighPoint's Human Resource Director and used it for personal gain, that Cushman's thefts took place over two years undetected, and that the Company had known about the fraud as of at least July 4, 2017 but not disclosed it (or

otherwise acted to protect Plaintiff or the Class) until over one month later. Specifically, the Aug. 7, 2017 MDA Press Release stated in relevant part:

> NORRISTOWN, Pa. (Aug. 7, 2017)—Montgomery County District Attorney Kevin R. Steele and East Norriton Township Police Chief Karyl J. Kates announce the arrest of Christine Cushman, 31, of Douglassville, Pa., on felony charges of ***Theft by Unlawful Taking, Receiving Stolen Property and Identity Theft*** for stealing $919,301 from her employer, HighPoint Solutions LLC, in East Norriton.
>
> ***HighPoint Solutions was alerted to the potential thefts by its payroll company, after a bank officer had noticed suspicious multiple direct deposits of significant size going into the defendant's personal account***. The company's chief financial officer met with East Norriton Township Detective Anthony Caso on July 4, 2017, about the potential theft. ***The ensuing investigation revealed that Cushman, who was HighPoint Solutions' director of human resources, was issuing fraudulent payroll checks in the names of four former subcontractors who no longer did business with the company. Cushman's responsibilities included preparing and reviewing the payroll information before it was submitted to the outside payroll company. The 45 thefts occurred between May 5, 2015 and June 15, 2017 and totaled $919,301.***
>
> "Nearly $1 million was stolen from this company by a senior-level, trusted employee. This breach of trust is ***something that needs to be guarded against*** by other companies," said Steele. "Unfortunately, corporate theft is ***all too prevalent and requires a system of checks and balances within the corporate system to make sure this doesn't happen.***"

Emphasis added.

15. The next day, HighPoint issued the Aug. 8, 2017 Email, in which Seitz alerted employees to the Data Breach and cash theft by linking a news article from a Berks County newspaper and downplaying the seriousness of what had occurred (undetected for two years!) while explaining that the Company would, consequently, be revamping its internal controls. Specifically, Seitz wrote:

> Colleagues,
>
> By now many of you are aware of the press release from the Pennsylvania District Attorney and subsequent articles regarding Christine Cushman, our former HR Manager. HighPoint indeed was the victim of a ***corporate theft over the past two***

6

*years*. The details are available in numerous online articles—I've attached the most thorough one I've found below.

http://www.readingeagle.com/news/article/amity-township-woman-stole-nearly-1-million-from-employer-police-say

The purpose of my email is to explain the actions we have taken, as well as inform you of any risks to the company and employees' personal and financial information. By all evidence we've seen, HighPoint was the only victim in this theft, as funds were stolen from <u>our</u> bank account. No client, employee, or subcontractor bank account ever received or had any funds withdrawn. Once informed, we took appropriate remediation steps—including notifying the authorities.

***We have hired an independent, national audit firm to perform a forensic audit of our financial records and our controls to ensure no further damage has occurred beyond what we've found, as well as to help strengthen our financial oversight.*** Although the amount stolen was indeed significant, I can assure you we are a profitable and financially sound company.

***For our employees, as I mentioned, all evidence points to only a HighPoint bank account being involved in this theft. However, please understand that our HR Department does have on file (and Ms. Cushman had access to) all employee Social Security information as well as bank account information for those using direct deposit. At this time, we don't know if employee personal information was also stolen. Please be on alert for any suspicious activity relating to your personal and financial records.***

For those customers who ask, please make clear to them that Ms. Cushman did not have access to customer information/invoicing, and we believe there is no risk to customer identity information. We can also assure them that we are a financially sound partner and that we will be filing an insurance claim for this matter.

Finally, we are coordinating all activities and communications strictly with the authorities, and I would ask all employees to refrain from participating in any social media discussions relating to this matter.

Thank you for your patience and understanding during this process.

Sincerely,
John Seitz, Chief Executive Officer
HighPoint Solutions, LLC

Bold/italic emphasis added.

16. On August 10, 2017, CEO Seitz emailed employees again, this time informing them that the Company had purchased identity protection subscriptions to start in the vague future, last a paltry one year and cover only U.S. employees and certain of their family members. Seitz also provided employees "for [their] benefit" with the script executives would be using in dealing with concerned clients – i.e. other potential victims – in which the Company again acknowledged its deficient internal controls. The Aug. 10, 2017 Email states:

> As a follow up to my Tuesday email *regarding the risk of compromise to our employee information (i.e. the "Cushman matter"), we have purchased a corporate-wide LifeLock identity protection subscription for all employees to help monitor and protect each employee's individual financial records. We have purchased a 12-month plan that covers each U.S.-based employee, plus spouse and 1 child.* Ms. Cushman had no involvement in ex-U.S. payroll processing, so we feel the U.S. focus covers all relevant risk. The corporate subscription will take a few days to activate, and we will be sending sign-up directions once available.
>
> In addition, we are communicating the events and our remediation plan to our clients on a case-by-case basis. If you are aware of a customer who has raised concerns about this matter, please direct that inquiry to a HighPoint executive, as we are replying directly to those clients one-on-one. For your benefit, our message to those clients is as follows:
>
> - *Once aware of the theft, we took immediate action*, including notifying local law enforcement authorities
> - As a $170M revenue company, this theft obviously hurt, but in no way affects our standing as a profitable and financially strong partner. We have also submitted an insurance claim to recover most of the loss
> - *This breach occurred within our HR payroll operations, specific to sub-contractors*—separated from our client financial operations that includes timesheet management, project management and invoicing
> - *We have hired a nationally-accredited audit firm to perform a thorough review of our financial controls and to perform a forensic audit of our financial records*
>
> Thank you for your continued patience as we continue to sort out and resolve this matter.
> Regards,
>
> John Seitz, Chief Executive Officer
> HighPoint Solutions, LLC

8

Emphasis added.

17. HighPoint has issued no further updates.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class, consisting of all who were damaged by HighPoint's negligence, including those whose PII was compromised in the Data Breach.

19. Excluded from the Class are Defendants, HighPoint's officers and Defendants' and HighPoint's officers' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

20. The members of the Class are so numerous that joinder of all members is impracticable. For example, HighPoint has approximately 1000 employees alone and Plaintiff alleges that Defendants' wrongdoing has affected at least HighPoint's past and current employees, agents, subcontractors, customers and service providers, as well as their families and dependents.

21. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' negligence and the other wrong doing described herein.

22. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

23. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether Defendants engaged in the wrongful conduct alleged herein;

- whether Defendants breached their duties to protect the personal and financial information of HighPoint's employees and members of the Class by failing to provide adequate data security and employee and financial oversight;

- whether Class members have sustained damages as a result of Defendants' conduct (or failure to act) and, if so, what is the proper measure of damages;

- whether Class members are entitled to recover actual damages and/or statutory damages; and

- whether Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement and/or other such relief.

24. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I – NEGLIGENCE

*All Defendants*

25. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

26. Defendants owed a duty of care to the Plaintiff and the Class to ensure that their PII was maintained securely and not used for improper purposes.

27. HighPoint breached its duty of care to Plaintiff and the Class to ensure that their PII was not used for improper purposes by, among other things: (1) failing to design and implement appropriate internal controls and supervisory systems; (2) failing to adhere to prudent

10

industry practices concerning PII storage, confidentiality, use and protection; (3) failing to properly and adequately monitor Cushman for criminal and other untoward activities, losing control of and failing to timely re-gain control over the PII; and (4) improperly storing and retaining the PII in spite of the aforementioned failings, among others.

28. Cushman breached her duty of care to Plaintiff and the Class by failing to ensure that their PII was not used for improper purposes by, among other things: (1) failing to bring to the attention of HighPoint the internal control deficiencies that she identified and ultimately exploited, including the Company's: deficient internal controls and supervisory systems: (2) failure to adhere to prudent industry practices concerning PII storage, confidentiality, use and protection; (3) failure to properly and adequately monitor employees for criminal and other untoward activities; and (4) improper storage and retainment of the PII in spite of the aforementioned failings, among others.  Indeed, Cushman's fraud was discovered by a third party, not HighPoint.  *See* Aug. 7, 2017 MDA Press Release ("HighPoint Solutions was alerted to the potential thefts by its payroll company, after a bank officer had noticed suspicious multiple direct deposits of significant size going into the defendant's personal account.").

29. As a direct and proximate result of the Defendants' actions alleged above, the Plaintiff and the Class suffered damages.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT II – INTRUSION UPON SECLUSION

### *All Defendants*

30. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

31. Central to Cushman's criminal activities, which HighPoint enabled, as described herein, was her intentional intrusion upon Plaintiff's and Class members' solitude or seclusion in that she unlawfully accessed and/or misused their PII, which had been entrusted to Defendants as a condition of employment or otherwise conducting business with HighPoint. Plaintiff and the Class members did not consent to any such intrusion.

32. Defendants' intentional intrusion on Plaintiffs' and Class members' solitude or seclusion would be highly offensive to a reasonable person.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT III – BREACH OF FIDUCIARY DUTY

### *All Defendants*

33. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

34. Defendants, HighPoint as employer and Cushman an executive management level employee and agent thereof, were fiduciaries to Plaintiff and the Class and, as such, were obligated to act primarily for the benefit of Highpoint's employees in matters connected with their employment.

35. HighPoint breached its duty of care to Plaintiff and the Class by failing to provide adequate protections regarding their PII and by allowing the PII to be accessed unlawfully and/or misused.

36. Cushman breached her duty of care to Plaintiff and the Class by accessing, stealing and misusing their PII and/or by allowing the PII to be unlawfully accessed and/or misused.

37.     As a direct and proximate result of the Defendants' actions alleged above, the Plaintiff and the Class members suffered actual damages.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seekss the relief set forth below.

### COUNT IV – BREACH OF CONTRACT

*Defendant HighPoint*

38.     Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

39.     Plaintiffs and the Class members had agreements with HighPoint, as Plaintiffs and the Class members engaged a mutual exchange of consideration whereby HighPoint entrusted Plaintiffs and the Class members: (i) to work in various roles on its behalf, in exchange for the promise of employment, with wages, benefits in some cases; (ii) to perform third party services for HighPoint in exchange for payment and secure PII; and/or (iii) to have HighPoint provide services in exchange for payment and secure PII.

40.     HighPoint's failure to keep Plaintiff's and Class members' PII secure from breach constitutes a material breach of the agreement between it and the Class.

41.     As a direct and proximate result of HighPoint's actions alleged above, the Plaintiff and the Class members have been damaged.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

### COUNT V – BREACH OF IMPLIED CONTRACT

*Defendant HighPoint*

42.     Plaintiff incorporates by reference the preceding and following paragraphs as

though fully set forth herein.

43. HighPoint required Plaintiff and the Class to provide PII as a condition of their employment or other financial dealings with HighPoint. In so doing, HighPoint implicitly and/or explicitly promised to keep the PII it collected from the Plaintiff and the Class secure and confidential.

44. Plaintiff and the Class members faithfully worked for, or otherwise provided services to, HighPoint and steadfastly kept their obligations. HighPoint failed to do so.

45. As a direct and proximate result of HighPoint's failure to secure, protect, and/or destroy the PII of the Plaintiff and the Class, Plaintiff and the Class members have been damaged.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT VI – NEW JERSEY COMPUTER RELATED OFFENSES ACT

### *All Defendants*

46. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

47. Under N.J.S.A. 2A:38A-3, a person or enterprise is liable for:

> The purposeful or knowing, and unauthorized altering, damaging, taking or destruction of any data, data base, computer program, computer software or computer equipment existing internally or externally to a computer, computer system or computer network;
>
> The purposeful or knowing, and unauthorized altering, damaging, taking or destroying of a computer, computer system or computer network;
>
> The purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system or computer network;
>
> The purposeful or knowing, and unauthorized altering, accessing, tampering with,

obtaining, intercepting, damaging or destroying of a financial instrument; or

The purposeful or knowing accessing and reckless altering, damaging, destroying or obtaining of any data, data base, computer, computer program, computer software, computer equipment, computer system or computer network.

48. Defendants did purposefully, knowingly and/or recklessly, without Plaintiff's or the Class members' authorization, access, attempt to access, tamper with, alter, damage, take, destroy, obtain and/or intercept Plaintiff's and Class members' PII contained on HighPoint's computers, servers, databases, equipment and/or network, or facilitate any of the above, in violation of N.J.S.A. 2A:38A-1 *et seq.*

49. Pursuant to N.J.S.A. 2A:38A-1 *et seq.*, Plaintiff and the Class members have been injured by the violations of N.J.S.A. 2A:38A-1 *et seq.*, and each seek damages for compensatory and punitive damages and the cost of the suit, including a reasonable attorney's fee, costs of investigation and litigation, as well as injunctive relief.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT VII – UNJUST ENRICHMENT

### *Defendant Cushman*

50. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

51. Plaintiff and the Class members conferred a benefit on Cushman without consent, namely (a) at least $919,301 and (b) their PII, which experts estimate can be worth hundreds of dollars per person on the black market or dark web.

52. Upon information and belief, Cushman realized such benefits through using PII to draft payroll checks to herself and possibly sales to third-parties.

53. Acceptance and retention of such benefit without Plaintiff's and Class members' consent is unjust and inequitable.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## COUNT VIII -- VICARIOUS LIABILITY

### *Defendant HighPoint*

54. Plaintiff incorporates by reference the preceding and following paragraphs as though fully set forth herein.

55. At all times material, HighPoint employed Cushman as Human Resource Director.

56. Cushman was under HighPoint's direct supervision, employ and control when she committed the wrongful acts alleged herein.

57. Cushman engaged in this conduct while acting in the course and scope of her employment with HighPoint, while serving as an agent of HighPoint and/or accomplished the wrongful acts out of her job-created authority.

58. Therefore, HighPoint is liable for the wrongful conduct of Cushman under the law of vicarious liability, including the Doctrine of Respondeat Superior.

WHEREFORE, Plaintiff, on behalf of herself and the members of the Class, respectfully seeks the relief set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class demand judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class

Representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts, practices and transactions alleged herein;

C.   Declare unlawful the acts, practices and transactions alleged herein, and enjoin Defendants from committing the acts alleged herein.  Included in the injunction, the provision of credit monitoring services for Plaintiff and the Class for at least twenty-five (25) years, the provision of bank monitoring for the Plaintiff and the Class for at least twenty-five (25) years, the provision of credit restoration services for Plaintiff and the Class for at least twenty-five (25) years, and the provision of identity theft insurance for Plaintiff and the Class for at least twenty-five (25) years.

D.   Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs including investigation costs; and

E.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

DATED:  August 18, 2017                **THE WEISER LAW FIRM, P.C.**

By: s/ James M. Ficaro
JAMES M. FICARO
N.J. Atty ID # 00123-2010
jmf@weiserlawfirm.com
CHRISTOPHER L. NELSON
PA BAR #85609
cln@weiserlawfirm.com
JOHN J. GROSS
PA BAR #91687
jjg@weiserlawfirm.com
22 Cassatt Avenue

>Berwyn, PA 19312
>Telephone: (610) 225-2677
>Facsimile: (610) 408-8062
>jmf@weiserlawfirm.com
>cln@weiserlawfirm.com
>jjg@weiserlawfirm.com
>
>*Counsel for plaintiff Jaclyn Moore*